UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHIRLENE GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:05-CV-1677-G |
| SAGE TELECOM, INC., ET AL., | ) | |
| | ) | **ECF** |
| Defendants. | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the court is the motion of the defendant CitiFinancial Auto Credit Inc.

("CitiFinancial") to abate this case and to compel arbitration.  For the reasons stated

below, the motion is granted.

I.  <u>BACKGROUND</u>

This case arises out of the termination of employment of the plaintiff Shirlene

Gray ("Gray") and her subsequent search for new employment.  In April 2001, Auto

One Acceptance Corporation ("Auto One") hired Gray as a collections specialist.

CitiFinancial Auto Credit Inc.'s Motion to Abate and Compel Arbitration, and Brief

in Support ("Motion") at 1.  In November 2002, CitiFinancial purchased Auto One.

*Id*.  Soon after, CitiFinancial conducted an orientation training session for its

employees in which it introduced its dispute resolution and arbitration policies.[1]  *Id*.

Gray attended this orientation and was advised that all employees were required to

comply with these policies and that continued employment constituted acceptance of

the arbitration policy.  *Id*. at 2.  Gray continued her employment with CitiFinancial,

but was discharged on December 2, 2002, for failure to meet the employer's

expectations for her performance.  *Id*.  On December 23, 2002, Gray filed a

complaint disputing her discharge under the dispute resolution policy and then

---

[1]      This arbitration policy provides that:

> arbitration [is] the required and exclusive
> forum for the resolution of all employment
> disputes based on legally protected rights . . .
> that may arise between an employee or *former
> employee* and U.S. Consumer Group . . .,
> including without limitation claims, demands,
> or actions *under Title VII of the Civil Rights Act
> of 1964*, . . . and any other federal, state, or
> local statute, regulation, or common law
> doctrine regarding employment
> discrimination, conditions of employment,
> *termination of employment, breach of contract, or
> defamation*.
>
> The only disputes not covered by the Policy are
> claims that an employee or former employee may
> have regarding Workers' Compensation or
> unemployment compensation benefits.

U.S. Consumer Group Employment Arbitration Policy at 35 ("Arbitration Policy"),
*attached to* Defendant's Appendix to its Motion to Abate and Compel Arbitration at
12 (emphasis added).

sought arbitration on April 17 and May 7, 2003. *Id*. Gray later dismissed this arbitration of her own accord. *Id*.

Approximately a year later, Gray applied for a position as a collection specialist with the defendant Sage Telecom, Inc. ("Sage"). Plaintiff's First Amended Petition ("First Amended Petition") at 2, *attached to* Appendix to Notice of Removal at Tab 5. As part of her interview, Gray was questioned by Ed DaCode ("DaCode"), who had been a human resource representative with CitiFinancial during Gray's employment there.[2] *Id*. DaCode was aware that Gray had previously filed a sexual harassment charge against CitiFinancial. *Id*. During the interview, DaCode asked Gray multiple questions in front of Sage's interviewer, inquiring about Gray's employment at CitiFinancial and her sexual harassment claim. *Id*. at 2-3. Ultimately, DaCode stated that Gray "did not belong" at a company like Sage. *Id*. The interview soon ended, and Sage did not hire Gray. *Id*. at 3.

Gray filed this suit in the 134th Judicial District Court of Dallas County on July 27, 2005. Plaintiff's Original Petition, *attached to* Appendix to Notice of Removal at Tab 3. On August 19, 2005, the case was removed to this court by CitiFinancial with Sage's consent, *see* CitiFinancial Auto Credit, Inc.'s Notice of Removal and Sage

---

[2]     It is unclear from the plaintiff's complaint why Da Code was present (*i.e.*, whether he was currently employed by Sage, or whether -- though not an employee -- he had been sought out by Sage for the purposes of questioning Gray, or whether he had contacted Sage on his own accord or under the direction of CitiFinancial for the more nefarious purpose of thwarting Gray's search for employment).

Telecom, Inc.'s Notice of Consent to Removal.  CitiFinancial filed the instant motion

on September 30, 2005.  *See* Docket Sheet.

## II.  ANALYSIS

### A.  Applicable Law

In considering whether a dispute is subject to binding arbitration, the first step

a court must take "is to determine whether the parties agreed to arbitrate that

dispute."  *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,

626 (1985).  In general, this determination is made by "applying the federal

substantive law of arbitrability, applicable to any arbitration agreement within the

coverage of the [Federal Arbitration] Act."  *Id.* (quoting *Moses H. Cone Memorial*

*Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 24 (1983)) (internal citations

omitted).  Here, the court sees no reason not to apply federal law in its analysis of

whether this case is subject to arbitration.  Neither party has argued that the Federal

Arbitration Act ("FAA") does not apply to this dispute, and the case appears to come

within the FAA's purview.  *See* 9 U.S.C. § 1 *et seq*.  However, the FAA is not an

independent source of federal jurisdiction and the party seeking relief under the FAA

must demonstrate the existence of federal question or diversity jurisdiction.  *Rio*

*Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 685 (5th Cir. 2001).  In

this case, because the claims involve a federal question (retaliation under Title VII of

the Civil Rights Act of 1964), this court has jurisdiction.  *See* 28 U.S.C. §1331; 42 U.S.C. § 2000e-5(f)(3).

Federal law strongly favors arbitration.  *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56 (1995) (the FAA "declared a national policy favoring arbitration.") (quoting *Southland Corporation v. Keating*, 465 U.S. 1, 10 (1984)); *Moses H. Cone Memorial Hospital*, 460 U.S. at 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").  Consequently, the FAA, by its terms, "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

To decide whether parties should be compelled to arbitrate their dispute, the Fifth Circuit has developed a two-prong inquiry.  *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001).  The first prong requires the court to determine whether "the parties agreed to arbitrate their dispute." *Id.* at 445.  Two considerations guide the court in making this determination: (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether

the dispute in question is within the scope of the arbitration agreement. *Id.* Under

the second prong, the court must ensure that no legal restraints external to the

agreement have foreclosed arbitration. *Id.* at 446. If the court finds that this two-

prong inquiry is satisfied, arbitration is mandatory. *Mitsubishi Motors*, 473 U.S. at

628.

    In her response, Gray does not contest whether she is a party to the arbitration

agreement or whether the agreement is valid or enforceable. Plaintiff's Response to

Motion to Abate and Compel Arbitration ("Response") at 2. Rather, Gray argues

only that her claims against CitiFinancial are not covered by the policy and therefore

the court cannot compel arbitration. *Id.* Accordingly, in determining whether

CitiFinancial's motion to compel arbitration should be granted, the court will address

only the scope of the arbitration agreement and the second prong of the Fifth Circuit

inquiry.

## B.  Scope of the Arbitration Policy

    The crux of Gray's opposition to CitiFinancial's motion to compel arbitration

is that her conflict with her former employer is not an "employment dispute" and is

therefore not within the scope of the arbitration policy. Response at 3. Instead, she

argues, her complaints are based on "CitiFinancial's interference with Plaintiff's

prospective employment with Defendant Sage Telecom, Inc., and not with her former

employment with . . . CitiFinancial," so that this dispute should be litigated in court,

rather than being ordered to arbitration. *Id.* The court notes, in beginning the analysis, that "when the scope of an arbitration agreement is reasonably in doubt, it should be construed in favor of arbitration." *Coffman v. Provost Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720, 724-25 (E.D. Tex. 2001) (citing *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985)), *aff'd*, 33 Fed. Appx. 705 (5th Cir.), *cert. denied*, 537 U.S. 880 (2002).

The plaintiff asserts several causes of action against CitiFinancial. Specifically, Gray begins with a claim of retaliation for asserting her rights under Title VII, and continues with claims under Texas state law for tortious interference with prospective relations, breach of fiduciary duty, intentional infliction of emotional distress, and conspiracy. First Amended Petition at 3-5. Rather than relying on the plaintiff's characterization of her claims, however, the court will analyze the factual allegations in the complaint to determine whether the arbitration policy applies. *Coffman*, 161 F. Supp. 2d at 730 (citing *Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000)).

As described above, all of Gray's claims arise from the same nucleus of facts. Essentially, Gray takes exception to the circumstances surrounding her interview for a position with Sage. Gray bases her claim of retaliation on Title VII and her claims of tortious interference, breach of fiduciary duty, and conspiracy on the Texas Labor Code, specifically the provisions pertaining to the authorized disclosure of information regarding a former employee, and the Texas common law. *See generally*

First Amended Petition at 3 (citing Title VII of the Civil Rights Act of 1964), 4-5

(citing TEXAS LABOR CODE §§ 103.002-103.003).[3]  The court understands Gray to be

alleging that DaCode conveyed to Sage information regarding Gray based upon

Gray's *previous employment relationship* with CitiFinancial.  So construed, this claim is

within the scope of CitiFinancial's arbitration policy, particularly since the policy

covers claims for defamation and the policy applies to "former employees" of

CitiFinancial.  *See* Arbitration Policy at 35; see also *Baldeo v. Darden Restaurants, Inc.*,

No. 04-CV-2185(JG), 2005 WL 44703, at *3 n.1 (E.D.N.Y. Jan. 11, 2005) (noting

that, had the scope of the arbitration agreement been contested, the court would find

the plaintiff's claims of discrimination, defamation, libel, slander, and tortious

interference with prospective contractual relationships were arbitrable because the

arbitration agreement covered "other employment-related claims").[4]  Regarding

---

[3]      Section 103.003 of the Texas Labor Code provides that "[a]n employer
may disclose information about a current or former employee's job performance to a
prospective employer of the current or former employee on the request of the
prospective employer or the employee."

[4]      A case from the Eastern District of Pennsylvania could be construed to
hold otherwise.  See *Kay v. Clear Channel Communications, Inc.*, No. 03-CV-06647,
2005 WL 758250, at *8-9 (E.D. Pa. Mar. 31, 2005) (slip copy).  There, the court
denied a motion to compel arbitration because the relevant agreement related *only* to
"employment-related claims" and the dispute arose from conduct after termination of
the plaintiffs' employment.  Beyond the fact that *Kay* is not precedent binding on
this court, it is distinguishable as well.  There, the arbitration agreement applied only
to "employees," not "former employees," as is the case here.  This difference in
language affects the scope of the arbitration agreement, particularly when there is a
presumption of arbitrability.

Gray's claim for retaliation, Title VII is explicitly covered in the arbitration policy.

Gray's other claims -- for tortious interference with prospective relations, breach of

fiduciary duty, and conspiracy -- must also be sent to arbitration because "arbitration

should not be denied 'unless it can be said with positive assurance that an arbitration

clause is not susceptible of an interpretation that could cover the dispute at issue.'"

*Coffman*, 161 F. Supp. 2d at 725 (quoting *Mar-Len of Louisiana*, 773 F.2d at 635).

Gray's last claim against CitiFinancial -- for intentional infliction of emotional

distress -- is based on DaCode's "interrogati[on] . . . regarding her sexual harassment

charge" in front of her prospective new employer and then stating that Gray "would

not be a good employee for [Sage]."  First Amended Petition at 4-5.  This claim

arguably stands on a different footing from Gray's other claims.  Rather than tying

her intentional infliction of emotional distress claim to any duties or responsibilities

imposed on CitiFinancial by federal anti-discrimination law or state labor laws, Gray

asserts that the "interrogati[on]" itself, without reference to any disclosure of

protected information, was "extreme and outrageous" and therefore formed the basis

of her emotional distress claim.  First Amended Petition at 4-5.  Claims for

intentional infliction of emotional distress can, however, be subject to mandatory

arbitration, provided they fall within the scope of the arbitration policy.  See *Shaw v.*

*Walsh Services, Inc.*, No. 3:96-CV-1772-D, 1997 WL 30907, at *1 (N.D. Tex. Jan. 22,

1997) (citing *Nazon v. Shearson Lehman Brothers, Inc.*, 832 F. Supp. 1540, 1543 (S.D.

Fla. 1993); *Bender v. Smith Barney Harris Upham & Company*, 789 F. Supp. 155, 160

(D.N.J. 1992)).  CitiFinancial argues that a Texas Supreme Court case holds that an

intentional infliction of emotional distress claim is preempted by Title VII, so the

court either must send this claim to arbitration or need not address it at all.

Defendant CitiFinancial Auto Credit, Inc.'s Reply to Plaintiff's Response to

Defendant's Motion to Compel Arbitration at 3; *Hoffman-LaRoche, Inc. v. Zeltwanger*,

144 S.W.3d 438, 447 (Tex. 2004) (holding that "[w]here the gravamen of a

plaintiff's complaint is really another tort, intentional infliction of emotional distress

should not be available"); see also *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816

(Tex. 2005) ("intentional infliction of emotional distress is a 'gap-filler' tort never

intended to supplant or duplicate existing statutory or common-law remedies").

Here, though, it is unclear whether Gray's emotional distress claim is based on alleged

retaliatory -- or some other -- behavior by her former employer.  However, if there are

any doubts about whether CitiFinancial's arbitration policy is broad enough to

encompass this claim, those doubts must be resolved in favor of arbitration.  Because

this claim is susceptible of being construed as alleging retaliation by CitiFinancial on

the basis of Gray's prior employment, the court must classify it as an "employment

dispute" within the scope of the arbitration policy.  See *Zandford v. Prudential-Bache

Securities, Inc.*, 112 F.3d 723, 727-30 (4th Cir. 1997) (compelling arbitration for

claims of intentional interference with business relationships and intentional

infliction of emotional distress because these claims "necessarily involve an evaluation of the employer's or the employee's performance during their employment relationship" and therefore "[arise] out of employment or termination of employment"). Moreover, if not linked to Title VII, the claim could be related to defamation of a former employee, which is explicitly included in the arbitration policy as a covered employment dispute. Therefore, this claim must also be sent to arbitration.

## C.  Possible Foreclosure of Arbitration

Concluding that Gray's claims fall within the scope of the applicable arbitration agreement, the court's next step is to determine whether any legal restraints external to the agreement have foreclosed arbitration. A claim is subject to arbitration unless Congress clearly intended to preclude the parties from waiving their judicial remedies. *Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20, 29 (1991); see also *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986). Since Gray has not addressed this issue, she has not met her burden to demonstrate such an intent. *Gilmer*, 500 U.S. at 26; *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). The court therefore finds that the motion to compel arbitration should be granted.

D.  Abatement Pending Arbitration

CitiFinancial has requested in its motion that, after compelling arbitration, the court should abate this action.  Motion at 8.  Section 3 of the FAA provides that a court shall "on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3.  The Fifth Circuit has held, however, that dismissal of a case is proper in some instances.  See *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration.") (emphasis in original); *Fedmet Corporation v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) (upholding dismissal on arbitration grounds even though the plaintiff would have no remedy because the statute of limitations had run).  Under this standard, the court grants CitiFinancial's motion to compel arbitration but will, in lieu of abatement, dismiss Gray's claims against CitiFinancial, without prejudice to arbitration of those claims.

D.  Gray's Remaining Claims Against Sage

Along with her claims against CitiFinancial, Gray asserts two state law claims against Sage: intentional infliction of emotional distress and conspiracy.  First Amended Petition at 5.  Since Sage is not a party to the arbitration policy, Gray's claims against it are not arbitrable.  See, *e.g.*, *United Steelworkers of America v. Warrior &*

- 12 -

*Gulf Navigation Company*, 363 U.S. 574, 582 (1960) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Zimmerman v. International Companies & Consulting, Inc.*, 107 F.3d 344, 346 (5th Cir. 1997) (FAA does not require arbitration "for parties who have not contractually bound themselves to arbitrate their disputes.").

Federal court jurisdiction exists over an entire action, including state law claims, when the federal and state law claims "'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349 (1988) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). Yet supplemental jurisdiction over state law claims is a "doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726. Consequently, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon*, 484 U.S. at 350.

When the federal claims are dismissed before trial and only state law claims remain, the balance of factors to be considered under the supplemental jurisdiction doctrine weigh heavily in favor of declining jurisdiction; therefore, the federal court should usually decline the exercise of jurisdiction over the remaining claims and send

- 13 -

them to state court.  See *id.* at n.7.  According to the Fifth Circuit, "[o]ur general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."  *Parker & Parsley Petroleum Company v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)).

In the instant case, the court has ordered arbitration of Gray's claims against CitiFinancial, and only her state law claims against Sage remain.  Because the federal (Title VII) claim is being dismissed before trial, the factors of judicial economy, convenience, fairness, and comity suggest that this court ought to decline jurisdiction over the remaining state law claims against Sage.  *See* 28 U.S.C. § 1367(c)(3), § 1441(c).

## III.  CONCLUSION

For the reasons stated above, CitiFinancial's motion to compel arbitration of Gray's claims against CitiFinancial is **GRANTED**.  Within thirty days of the date of this memorandum opinion and order, counsel for CitiFinancial shall serve upon Gray, the court, and the American Arbitration Association a demand for the arbitration of Gray's claims.  Within thirty days of serving that demand for arbitration, counsel for CitiFinancial shall notify the court, in writing, of the schedule for the arbitration proceeding.  Upon the filing of these materials, Gray's claims against CitiFinancial will be dismissed without prejudice to assertion of those claims before the arbitral tribunal.

The court declines to exercise jurisdiction over Gray's remaining state law claims against the defendant Sage.  Accordingly, Gray's claims against Sage are **REMANDED** to the **134th Judicial District Court of Dallas County, Texas**.  The clerk shall mail a certified copy of this memorandum opinion and order to the district clerk of Dallas County, Texas.  28 U.S.C. § 1447(c).

**SO ORDERED**.

January 19, 2006.

A. JOE FISH
CHIEF JUDGE