UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHIRLENE GRAY,                     )
                                   )
            Plaintiff,             )
                                   )        CIVIL ACTION NO.
VS.                                )
                                   )        3:05-CV-1677-G
SAGE TELECOM, INC.,                )
                                   )        **ECF**
            Defendant.             )

## MEMORANDUM OPINION AND ORDER

Before the court are motions by the defendant, Sage Telecom, Inc. ("Sage,"
"the defendant," or "the movant"), for summary judgment and to strike certain
statements in documents attached to the plaintiff's, Shirlene Gray ("Gray," "the
plaintiff," or "the nonmovant")'s, response in opposition to the motion for summary
judgment. For the reasons set forth below, the defendant's motion to strike is
granted in part and denied in part, and the defendant's motion for summary
judgment is granted.

## I. BACKGROUND FACTS

This case arises out of the termination of the plaintiff's employment and her
subsequent search for new employment. The following facts are undisputed.

In April 2001, Auto One Acceptance Corporation, now CitiFinancial Auto Credit, Inc. ("CitiFinancial"), hired Gray as a collections specialist. CitiFinancial Auto Credit Inc.'s Motion to Abate and Compel Arbitration, and Brief in Support ("Motion to Compel") at 1. CitiFinancial instituted a dispute resolution and arbitration policy, and Gray was advised that continued employment constituted acceptance of the arbitration policy. *Id.* at 2. Gray continued her employment with CitiFinancial, but was discharged on December 2, 2002, for failure to meet the employer's expectations for her performance. *Id.* On December 23, 2002, Gray filed a complaint contesting her discharge under the dispute resolution policy and then sought arbitration on April 17 and May 7, 2003. *Id.* Gray later dismissed this arbitration of her own accord. *Id.* At some point, though exactly when is unclear in the record, Gray filed a complaint with the Equal Employment Opportunity Commission ("E.E.O.C.") alleging sexual harassment on the part of CitiFinancial. *See* Plaintiff's Original Petition ("Original Petition") ¶ II, *attached to* Appendix to Notice of Removal at Tab 3.

Approximately a year later, Gray learned from Homer Turner ("Turner"), a former co-worker of Gray's, about a position available at Sage, the company through which Turner was then employed. *See* Declaration of Shirlene Gray ("Gray Declaration") ¶ 3, *located in* Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Summary Judgment Brief") as Exhibit A.

Turner instructed Gray to complete an on-line electronic application and then to fill out a hard copy of the same application at Sage's office.  *See* Oral Deposition of Shirlene Gray ("Gray Deposition") at 25:1-4, *located in* Plaintiff's Summary Judgment Brief as Exhibit C.  The hard copy of the application is dated March 3, 2004.  *See* Gray Declaration at Exhibit 3.  At some point between March 2, 2004, and the week of April 6, 2004,[1] Gray interviewed with an employee of Sage ("Parra" or "Interviewer")[2] and completed a computer skills test.  The main point of contention -- and the crux of Gray's claims against Sage -- surround the events that allegedly transpired at the conclusion of her interview with Parra.[3]

Ultimately, Sage did not hire Gray.  Zuczek Declaration ¶ 6.  Gray filed a charge of retaliation with the E.E.O.C. on February 14, 2005, alleging that she was not offered the position due to her earlier E.E.O.C. filing against her former employer, CitiFinancial.  *See* Gray Declaration ¶ 16.  Gray filed this case in the 134th Judicial

---

[1]      See *infra* Section I.A.  The interview date is a point of contention in this case.

[2]      Gray avers that she interviewed with Rueben Parra, Gray Declaration ¶ 8; Sage contends she interviewed with Bobby Jones, Declaration of Patricia Zuczek ("Zucek Declaration") ¶ 3, *located in* Appendix in Support of Defendant's Motion for Summary Judgment as Exhibit A.  For purposes of this motion, the identity of the interviewer is irrelevant.  Thus, for clarity, the interviewer will be referred to hereinafter as "Parra" or "the interviewer".  However, this designation is only for the purposes of this opinion and is not a determination by the court as to the interviewer's identity.

[3]      See *infra* Section I.B.

District Court of Dallas County on July 27, 2005.  *See* Original Petition.  On August

19, 2005, the case was removed to this court by CitiFinancial, *see* CitiFinancial Auto

Credit, Inc.'s Notice of Removal and Sage Telecom, Inc.'s Notice of Consent to

Removal.  CitiFinancial filed a motion to compel arbitration on September 30, 2005.

*See* Docket Sheet.  The court granted that motion to compel arbitration, *see*

Memorandum Opinion and Order, January 19, 2006, and later dismissed the cause of

action against CitiFinancial, *see* Order of Dismissal as to Defendant CitiFinancial

Auto Credit, Inc., July 11, 2006.  Upon dismissal of the claims against CitiFinancial,

the following causes of action remain against Sage:  (1) retaliation in violation of Title

VII and Texas state law, (2) intentional infliction of emotional distress, and (3)

conspiracy to "attempt to circumvent the legal limitations on permissible questioning

provided by the Texas Labor Code."  *See* Plaintiff's First Amended Petition

("Petition") ¶ VIII.  With regards to the third cause of action, it should be noted that

Gray fails to allege that either Sage or CitiFinancial committed the underlying wrong,

if any such wrong exists, of circumventing the "legal limitations on permissible

questioning."

    The factual contentions set forth below are in dispute:

  A.  <u>Timing of Interview and Notification of Decision Not to Hire Gray</u>

    The date of the interview is in dispute between the parties and is relevant as to

the timeliness of Gray's Title VII cause of action.  Sage maintains that Gray

interviewed with the company on March 2, 2004, while Gray insists that she

interviewed with Sage on April 5 or 6, 2004. *Compare* Gray Declaration ¶ 6 (stating

the interview date and skills test date to be April 5 or 6) *and* Affidavit of Homer

Turner ("Turner Affidavit") ¶ 2, *located in* Plaintiff's Summary Judgment Brief as

Exhibit B, *with* Zuczek Declaration ¶ 3 (stating the interview date to be March 2) *and*

Zuczek Declaration at Exhibit 1 (indicating on a form entitled "Interview Questions"

the interview date to be March 2) *and* Gray Declaration at Exhibit 1 (indicating on a

computer printout the date of the skills test to be March 2).

Also in dispute and relevant to this case is the date when Sage notified Gray of

its intent not to hire her.  Sage alleges that on March 19, 2004, Patricia A. Zuczek,

Sage's corporate recruiter, drafted a letter to Gray notifying her that she was not

selected to fill the position for which she applied and mailed the letter no more than

one business day later.  *See* Zuczek Declaration ¶ 7 and Exhibit 2.  Gray contends she

did not learn of Sage's decision not to hire her until May 5, 2004, when Gray

followed up on the interview by placing a phone call to Sage.  *See* Gray Declaration

¶ 15.

### B.  Presence of CitiFinancial Employee During or After Interview

The causes of action asserted against Sage rest on Gray's allegation that while

at Sage for her employment interview, a person by the name of Ed DaCoder

("DaCoder"),[4] an employee of CitiFinancial, entered the interview room and

questioned her.  Gray contends that at the conclusion of Parra's questioning, he

informed Gray that someone else needed to speak with her; Parra then left the room.

*See* Gray Declaration ¶ 9; Gray Deposition at 34:16-35:17.  Gray alleges that ten to

fifteen minutes passed and DaCoder then entered the room.  Gray Declaration ¶ 10;

Gray Deposition at 35:1-5.  Gray asserts that DaCoder did not initially identify

himself as an employee of CitiFinancial but instead continued questioning her as if it

was part of the interview.  *See* Gray Declaration ¶ 10; Gray Deposition at 35:6-12.

According to Gray, DaCoder asked questions regarding Gray's interest in working for

Sage, noting that Sage was a smaller company than the ones for which she previously

worked and that the distance between Sage's location and Gray's home equated to a

lengthy commute.  *See* Gray Deposition at 38:13-20.  Gray avers that DaCoder then

identified himself as being an employee of CitiFinancial.  *See* Gray Declaration at

¶ 11; Gray Deposition at 35:8-17.  She says DaCoder told her that he was aware of

Gray's pending E.E.O.C. claim against CitiFinancial, that CitiFinancial had

determined the actions alleged in her E.E.O.C. claim were true, and that if Gray

dropped her E.E.O.C. claim, CitiFinancial would re-employ her.  *See* Gray Declaration

¶ 11; Gray Deposition at 38:25-40:5.  Finally, Gray asserts that at the conclusion of

---

[4]     There is a dispute as to the name of the CitiFinancial employee who
allegedly questioned Gray.  The record is replete with references to "Ed Code," "Ed
DaCode," and "Ed DaCoder."  For the sake of consistency, this person will be
referred to hereinafter as "DaCoder."

the conversation with DaCoder, the two of them left the room and spoke briefly with Parra.  *See* Gray Deposition 35:23-36:17.

Gray does not contend that the conversation between herself and Parra was hostile or confrontational.  *See* Gray Deposition at 40:8-25.  According to Gray, DaCoder never raised his voice during the conversation, and DaCoder did not make any threats to Gray.  *See id.*

Sage asserts that no such meeting ever took place at Sage's offices.  *See* Zuczek Declaration ¶ 4.  Further, Sage contends that if such a meeting took place, the meeting was not part of the interview.  *See id.*

## II. ANALYSIS

### A. Legal Standard on Motion for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986).  The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).  Nonetheless, summary judgment is

a drastic remedy that should be used cautiously. *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

While all of the evidence must be viewed in a light most favorable to the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movant makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex*, 477 U.S. at 323; *Lindsey v. Sears Roebuck and Company*, 16 F.3d 616, 618 (5th Cir. 1994) ("When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial."); *Fontenot*, 780 F.2d at 1194 ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor.") (emphasis in original). The

pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no

genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

If the movant makes the showing, the nonmovant must then direct the court's

attention to evidence in the record sufficient to establish that there is a genuine issue

of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this burden, the

"opponent must do more than simply show . . . some metaphysical doubt as to the

material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475

U.S. 574, 586 (1986).  Instead, the nonmovant must show that the evidence is

sufficient to support a resolution of the factual issue in her favor.  *Anderson*, 477 U.S.

at 249.  When conflicting evidence is presented, the court is not permitted to make

credibility determinations regarding the evidence.  See *Lindsey v. Prive Corporation*,

987 F.2d 324, 327 (5th Cir. 1993).  The nonmovant cannot survive a motion for

summary judgment by merely resting on the allegations in her pleadings.  *Isquith for

and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert.

denied*, 488 U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

B. Evidentiary Standard on Motion for Summary Judgment

To the extent that the nonmovant bears the burden of demonstrating a

genuine issue of material fact, the nonmovant need not present evidence meeting the

admissibility requirements for trial.  See *Celotex*, 477 U.S. at 324.  Rather, the

nonmovant may rely on any form of evidence listed in Rule 56(c).  *See id.* (noting the

nonmovant does not need to depose her own witnesses to defeat a motion for summary judgment).  While the form of the nonmovant's evidence need not be admissible, the content of the evidence must meet evidentiary requirements.  See *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997) (finding that the hearsay statements in an affidavit submitted to defeat summary judgment were "incompetent summary judgment evidence").  That is, while an affidavit has limited admissibility at trial, it is sufficient evidence to defeat a motion for summary judgment, but inadmissible statements in the affidavit, such as hearsay statements, may not be considered by the court.  *See id.*

## C.  Motion to Strike

After Gray filed her response to the defendant's motion for summary judgment with attached exhibits, Sage filed both a reply brief and a motion to strike portions of Gray's exhibits.  Sage moves to strike:  (1) portions of Gray's declaration, alleging that such portions are inadmissible hearsay, (2) a portion of Gray's declaration, arguing that it is conclusory, and (3) a portion of Turner's affidavit, asserting that he failed to demonstrate personal knowledge of the information contained therein.

1.  *Defendant's Motion To Strike Portions of Gray's Declaration as Hearsay*

Sage argues that portions of paragraphs 10[5] and 12[6] and all of paragraph 11[7] of

Gray's declaration should be stricken as inadmissible hearsay.  *See* Defendant Sage

Telecom, Inc.'s Motion to Strike ("Motion to Strike") at 2-3.  All of the assertions

claimed by Sage to be hearsay, in violation of Federal Rule of Evidence 802, refer to

statements allegedly made by DaCoder to Gray after Parra left the interview room.

Gray responds to Sage's hearsay argument by maintaining that the statements fall

outside the definition of hearsay, as set forth in Rule 801, because the statements in

question are not being offered to prove the truth of the matter asserted but only for

---

[5]     Sage objects to Gray's sworn statement that after DaCoder entered the interview room he "started asking me questions about why I wanted to work for a company like Sage since I had experience with larger companies."  Gray Declaration ¶ 10.

[6]     Sage objects to the phrase "based upon Mr. DaCode's [sic] statements" within the sentence "But, based upon Mr. DaCode's [sic] statements and the statements of Mr. Parra during my interview, I was hopeful to hear from either Sage or from CitiFinancial that I would have a job in the near future."  Gray Declaration ¶ 12.

[7]     "Mr. DaCode [sic] then identified himself as the Supervisor of Human Resources for my former employer, CitiFinancial after being merged with Auto One Acceptance.  Mr. DaCode [sic] told me he was aware that I had a pending EEOC charge against CitiFinancial for sexual harassment.  He also told me that the people at CitiFinancial knew my claims against them were true and that if I dropped my claim against CitiFinancial I could get my job back.  He also said that CitiFinancial needed to take care of some things before they could get back in contact with me about giving me my job back.  Additionally, he asked if the contact information on my application with Sage was correct in order to get in contact with me."  Gray Declaration ¶ 11.

the purpose of showing that DaCoder made these statements to Gray.[8]  *See* Plaintiff's

Response to Defendant's Motion to Strike ("Plaintiff's Response") at 2-3.

This court is persuaded by Gray's argument; these statements are not being

offered to prove the truth of the matter asserted.  When statements are introduced to

prove what was said and not the truth of what was stated, those statements fall

outside of the hearsay rule.  See *United States v. Gavagan*, 280 F.2d 319, 329-30 (5th

Cir. 1960) (holding that testimony of a witness regarding statements by another

person not a party to the action was not hearsay because "[t]he fact being proved was

the conversation -- that is, what was stated in the conversation, not the truth of it"),

*cert. denied*, 364 U.S. 933 (1961).  For this reason, the defendants' motion to strike

portions of paragraphs 10 and 12 and paragraph 11 is denied.

---

[8]     Though neither Sage nor Gray raised the issue, the court considered whether the objected statements constitute an exception to the hearsay rule under the rule regarding coconspirators.  *See* FED. R. EVID. 801(d)(2)(E).  Under Rule 801(d)(2)(E) statements are not hearsay if the statements are "by a coconspirator of a party during the course and in furtherance of the conspiracy."  Though most of the cases regarding this exception involve criminal law, the co-conspirator exception applies to civil cases as well.  See generally *Viazis v. American Association of Orthodontists*, 314 F.3d 758 (5th Cir. 2002), *cert. denied*, 538 U.S. 1033 (2003).  For the coconspirator exclusion to the hearsay rule to apply, the proponent of the statement must demonstrate by a preponderance of the evidence that:  (1) a conspiracy existed, (2) the statement was made in furtherance of the conspiracy, and (3) the coconspirator and the party opposing admission were members of the conspiracy.  *See id.* at 767.  However, because Gray fails on her claim to establish a conspiracy, see *infra*, Section II.D.3., these statements are not covered by the coconspirator exception.

2. *Defendant's Motion to Strike Portions of Gray's Declaration as Conclusory*

The defendant moves to strike the following statement from Gray's declaration: "I made the connection between the presence of Ed [Da]Coder with the denial of my employment application." *See* Motion to Strike at 3.  Sage argues this statement is conclusory and reflects only the opinion of the plaintiff in this case. *See id.*  Gray asserts that the declaration is not conclusory because the statement is based on her personal knowledge. *See* Plaintiff's Response at 3.  Statements setting forth conclusory or ultimate facts or asserting conclusions of law are insufficient evidence on a motion for summary judgment.  See *Clark v. America's Favorite Chicken Company*, 110 F.3d 295, 297 (5th Cir. 1997).  Because the court finds that Gray's statement is one of conclusory fact -- that there was a connection between DaCoder's presence and Sage's decision not to hire her --, the court agrees with Sage that the statement should be stricken from the declaration.  To this extent, the defendant's motion to strike is granted.

3. *Defendant's Motion to Strike Portions of Turner's Affidavit as Conclusory and Lacking Foundation*

Sage moves to strike paragraph two of the Turner Affidavit, *see* Motion to Strike at 4, which states, "I have first hand knowledge that Shirlene M. Gray was present at Sage Telecom during the week of April 5, 2004 for an employment interview."  Turner Affidavit ¶ 2.  Sage objects to this statement because Turner fails to describe how it was that he had personal knowledge that Gray's presence at Sage

was for the purpose of an interview.  *See* Motion to Strike at 4.  In its motion to strike, Sage speculates that Turner's personal knowledge is based on hearsay statements of Gray to Turner.  *See id.*  Gray's only response to this portion of the motion to strike is that by the time of trial this evidence will be "adduced to admissible form."  *See* Plaintiff's Response at 3-4.

To the extent that Sage's motion to strike challenges the phrase "for an employment interview," the court grants the motion.  On a motion for summary judgment, the evidence presented by the nonmovant must "show affirmatively that the affiant is competent to testify to the matters stated therein."  *See* FED. R. CIV. P. 56(e); *Gibson v. Liberty Mutual Group,* No. 3:02-CV-2306-D, 2004 WL 942280, at *3 (N.D. Tex. Apr. 30, 2004) (granting the defendant's motion to strike portions of an affidavit in part because it failed to show how the affiant obtained personal knowledge), *aff'd,* 129 Fed. Appx. 94 (5th Cir. 2005); see also *Diamond Offshore Company v. A&B Builders, Inc.,* 302 F.3d 531, 544 n. 13 (5th Cir. 2002) (not an abuse of discretion for district court to consider affidavit from a witness who was Director of Claims for the plaintiff, who swore that he had "personal knowledge of the facts stated" in the affidavit, and who testified that he had access to and reviewed the plaintiff's records as they pertained to information contained in the affidavit).  Gray's assertion that at some time in the future she will be able to present admissible

evidence from Turner on this subject does not prevent exclusion of the statement on

the current state of the record.

However, Sage fails to explain why the entire statement must be stricken from

the record.  Even when one portion of an affidavit must be excluded due to its lack of

personal knowledge, the district court must consider the portions of the affidavit that

are properly submitted.  See *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992)

(holding that the district court was in error when it excluded the entire affidavit

instead of just the inadmissible portions).  While one must speculate as to how

Turner obtained his firsthand personal knowledge of the interview, there is no need

to speculate as to how Turner obtained firsthand knowledge of Gray's presence at

Sage.  Gray testified at her deposition that after her interview with Parra and the

conversation with DaCoder, she spoke with Turner while on Sage's premises.  *See*

Gray Deposition at 29:9-23 (recalling her conversation with Turner).  Thus the court

will consider the Turner affidavit to the extent that it provides competent summary

judgment evidence of Gray's presence at Sage during the week of April 5, 2004.

Moreover, the challenge presented by Sage to this statement is of little

importance in resolving the motion for summary judgment.  The only purpose served

by the Turner affidavit is to corroborate the statements made by Gray under oath in

both her declaration and her deposition.  Thus, Turner's statements only go to the

credibility of Gray's statements, a consideration the court cannot take into account

on a motion for summary judgment.  The oft stated rule that courts are not to engage in credibility determinations at the summary judgment stage of litigation, see *Lindsey*, 987 F.2d at 327, renders the Turner affidavit of little import.

## D.  Motion for Summary Judgment

Sage moves for summary judgment on all of the three claims against it: (1) retaliation in violation of Title VII and Texas state law, (2) intentional infliction of emotional distress, and (3) conspiracy to "attempt to circumvent the legal limitations on permissible questioning provided by the Texas Labor Code."

### 1.  *Retaliation Claim:  Gray Fails to Present a Genuine Issue That "But For" Her Protected Activity Sage Would have Hired Her*

Sage presents three separate grounds in support of its motion to dismiss Gray's retaliation claim.  First, Sage argues the Title VII cause of action is barred because Gray failed to file her claim with the E.E.O.C. within the 300-day statute of limitations applicable to such claims.  Second, Sage asserts that the retaliation claim fails on its merits because Gray has not presented a genuine issue of material fact with regards to her ability to prove the *prima facie* elements for retaliation.  Third, Sage alternatively contends that even if Gray met her initial burden of proving the *prima facie* elements, Gray has not presented a genuine issue of material fact to carry her ultimate burden of demonstrating that the legitimate, non-discriminatory reasons proffered by Sage for deciding not to hire Gray were merely pretextual.

Persons alleging a violation of Title VII for retaliation must file their claims with the E.E.O.C. within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). Because the statute of limitations is an affirmative defense, the burden to demonstrate that there is no genuine issue of material fact rests with the defendant. See *Lindsey*, 16 F.3d at 618; *Fontenot*, 780 F.2d at 1194. When there is a genuine factual dispute as to the date when the statute of limitations would begin to run, the court must allow the nonmovant to put on evidence regarding the date on which the alleged event occurred. See *Higginbotham v. Ochsner Foundation Hospital*, 607 F.2d 653, 657 (5th Cir. 1979).

The parties disagree both as to the date of the interview and as to the date of notification by Sage to Gray of its decision not to hire her. It undisputed that Gray filed her charge with the E.E.O.C. regarding the alleged retaliatory non-hire on February 14, 2005. Gray Deposition at Exhibit 2. Sage argues that Gray interviewed on March 2, 2004, Zuczek Declaration ¶ 3, and that Zuczek mailed a letter to Gray on or about March 19, 2004 indicating Sage's intent not to hire Gray, Zuczek Declaration ¶ 7 and Exhibit 2. Under Sage's version of the facts -- and applying a seven day presumption of receipt, see *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 380 (5th Cir. 2002), *cert. denied*, 537 U.S. 1200 (2003), -- the adverse employment action would have occurred no later than March 29, 2004 -- the date of receipt; thus Gray's time to file with the E.E.O.C. expired no later than January 29, 2005, making

her February 14, 2005 filing untimely.  Gray, on the other hand, alleges the interview took place on or about April 5, *see* Gray Declaration ¶¶ 6-7, and that she was notified of Sage's decision not to hire her on May 5, 2004, *see id* ¶¶ 14-15.  According to Gray's version of the facts, the statute of limitations for her filing with the E.E.O.C. expired on March 1, 2005, making her February 14 filing timely.

Though Sage is able to present several pieces of evidence supporting its account of the events surrounding the decision not to hire Gray -- the Zuczek Declaration, the interviewer's notes, the Zuczek letter -- Gray, through competent and properly considered summary judgment evidence, demonstrates a genuine issue of material fact with regards to the date of the decision not to hire Gray.  Thus, a genuine issue of material fact exists with regards to the timeliness of her E.E.O.C. filing, and Sage's motion for summary judgment on this ground must be denied.

The two arguments presented by Sage challenging Gray's Title VII claim on its merits require a more in-depth examination.  At present, there is confusion within the courts of the Fifth Circuit as to the appropriate standard applicable in Title VII retaliation cases.  For the benefit of these and future litigants, the court will attempt to clarify the applicable case law.

Essentially, there are two broad types of Title VII cases -- those based on direct evidence, see *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985), and those based on circumstantial evidence, see *McDonnell Douglas Corporation v. Green*, 411 U.S.

792 (1973).  Differing standards accompany these two expansive categories.  Under

the *Trans World Airlines* line of cases, when a plaintiff is able to offer direct evidence

in support of her Title VII claim, the defendant must produce evidence to show that

the adverse employment decision would have occurred even in the absence of the

unlawful purpose.  See *Fierros v. Texas Department of Health*, 274 F.3d 187, 192 (5th

Cir. 2001).  Direct evidence in the context of Title VII includes "any statement or

written document showing a discriminatory motive on its face."  *See id.* at 195

(quoting *Portis v. First National Bank*, 34 F.3d 325, 329 (5th Cir. 1994)).  When

confronting a motion for summary judgment in a case involving direct evidence, the

plaintiff -- to survive summary judgment -- need only show that retaliatory animus

motivated or was a substantial factor in the adverse employment decision.  See *Fierros*,

274 F.3d at 195.  To be clear, the plaintiff's burden to survive summary judgment in

a direct evidence case is not a "but for" inquiry.

On the other hand, when a plaintiff attempts to prove a violation of Title VII

using circumstantial evidence, the *McDonnell Douglas* burden shifting analysis applies.

See 411 U.S. at 802.  The initial burden for such claims resides with the plaintiff,

who must establish the *prima facie* elements of a retaliation claim:  (1) she engaged in

a protected activity, (2) she was subject to an adverse employment action, and (3) a

causal connection exists between the protected activity and the adverse employment

action.  See *Ackel v. National Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).

Once the plaintiff demonstrates these initial elements, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision.  See *McDonnell Douglas*, 411 U.S. at 802.  If the defendant is able to state such a proper reason, the burden shifts back to the plaintiff to demonstrate that the reason proffered by the defendant is mere pretext.  See *McDonnell Douglas*, 411 U.S. at 803; *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).  This burden shifting analysis forces the courts to engage in two independent causation inquiries on summary judgment -- the first at the *prima facie* stage; the second at the pretext stage.  At issue in this case (and in debate within the circuit) is the appropriate burden on each of these causation inquiries.

The causal connection element of the *prima facie* case need not be proven under a "but for" causation standard; it is not necessary for the plaintiff to demonstrate that the protected activity was the sole reason for the adverse employment decision.  See *Ackel*, 339 F.3d at 385; *Gee*, 289 F.3d at 345.  In the instant case, Sage argues that at the *prima facie* causal connection stage, a "but for" standard should apply, *see* Defendant Sage Telecom, Inc.'s Reply in Support of Its Motion for Summary Judgment ("Defendant's Summary Judgment Reply") at 4; this argument stems from the recent Fifth Circuit opinion *Septimus v. University of Houston*, 399 F.3d 601 (5th Cir. 2005).  The defendant points the court to the following language from that opinion:  "The proper standard of proof on the causation element of a Title VII

retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred 'but for' her protected conduct." *Id.* at 608.  Read in isolation, this statement can be misleading (as it appears to have been to Sage); however, when read in context, it is apparent that in the *Septimus* opinion Judge Kinkeade was referring not to the first causation inquiry but to the latter one.[9]

At the demonstration of pretext stage, the plaintiff must show that "but for" her engaging in a protected activity, she would have been offered the position in

---

[9]    In context, the entire passage reads:

> The *McDonnell Douglas* evidentiary framework applies to Title VII retaliation claims brought under a pretext theory.  Under that framework, the employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose.  The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred "but for" her protected conduct.  This court has "consistently held that *in retaliation cases where the defendant has proffered a nondiscriminatory purpose* for the adverse employment action *the plaintiff has the burden of proving that 'but for'* the discriminatory purpose he would not have been terminated.

*Id.* (footnotes omitted; emphasis added).  See also *Erickson v. Baylor Institute for Rehabilitation at Gaston Episcopal Hosptial*, No. 3:04-CV-1433-M, 2006 WL 212106, at *4 n.7 (N.D. Tex. Jan. 26, 2006) (noting the court's  understanding that the *Septimus* phrase in question described the causation inquiry at the pretext stage, not at the *prima facie* stage).

question. See *Septimus*, 399 F.3d at 608; see also *Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004). To survive a motion for summary judgment by the defendant, the plaintiff must proffer some evidence to rebut the legitimate, non-discriminatory reason given by the employer. See *Hamilton v. Texas Department of Transportation*, No. 03-20362, 85 Fed. Appx. 8, 15-16, 2004 WL 34811, at **16 (5th Cir. Jan. 6, 2004) (finding summary judgment was appropriate where the only evidence adduced by the plaintiff to counter the defendant's legitimate, non-discriminatory reason for the adverse employment action was the plaintiff's own statement that he deserved the position "because of [his] exceptional skills"; alteration in original). Furthermore, the subjective belief by the plaintiff that she deserved a particular employment position is insufficient evidence to create a genuine issue of material fact sufficient to defeat a motion for summary judgment. *See id.* (holding "an employee's subjective belief that he deserved the promotion, without more, is insufficient proof of pretext to raise a genuine issue of fact regarding an employer's motivation").

The final question on the applicable law is to resolve the impact, if any, of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), on claims of retaliation under Title VII. *See* Plaintiff's Summary Judgment Brief at 7 (urging that the Supreme Court has lessened the standards applicable to Title VII cases in recent years). In *Desert Palace*, the Supreme Court held that in a case of *discrimination* under Title VII, even when

only circumstantial evidence was being presented, it was an error to instruct the jury

that the plaintiff needed to meet a "but for" standard to recover; rather the plaintiff

could recover under a "motivating factor" standard.  *See* 539 U.S. at 101-02.

However, the *Desert Palace* holding stemmed heavily from the language of 42 U.S.C.

§ 2000e-2(m).  See *Desert Palace*, 539 U.S. at 101-102.  Section 2000e-2(m) was

amended prior to *Desert Palace* to state that plaintiffs could recover for discrimination

if the plaintiff could show that race, color, religion, sex or national origin was a

"motivating factor" in the employment decision, "even though other factors also

motivated the practice."  42 U.S.C.  2000e-2(m) (2003).

In the Fifth Circuit, the *Desert Palace* holding has not been extended to include

cases of retaliation under Title VII; instead, the holding is limited to cases of

discrimination.  See *Winter v. Bank of America, N.A.*, No. 3:02-CV-1591-L, 2003 WL

23200278, at *10 n.16 (N.D. Tex. Dec. 12, 2003) (declining to extend *Desert Place* to

a retaliation claim); see also *Staten v. New Palace Casino, LLC*, No. 05-60144, 2006

WL 1737438, at *9 (5th Cir. June 19, 2006) (noting that the Fifth Circuit has not

decided whether to extend *Desert Palace* to Title VII retaliation cases).  But see *Rachid

v. Jack in the Box, Inc.*, 376 F.3d 305, 311 (5th Cir. 2004) (extending *Desert Palace* to

include discrimination claims under the ADEA).  In contrast to the discrimination

claims in *Desert Palace*, retaliation claims stem from 42 U.S.C. 2000e-3(a), which does

not contain language similar to § 2000e-2(m).  Because this court refuses to extend

*Desert Palace* to retaliation claims, the holding of *Desert Palace* is inapplicable to the instant case.

Gray must proceed under the *McDonnell Douglas* burden shifting framework because she is asserting a retaliation claim based on circumstantial evidence.  At the *prima facie* stage of that analysis, she must demonstrate a causal connection, but need not prove "but for" causation to do so.  Accordingly, if Gray is able to present a genuine issue of material fact regarding the causal connection, the burden will shift to Sage, requiring it to state a legitimate, non-discriminatory reason for its decision not to hire Gray.  If Sage states such a reason, the burden shifts back to Gray who, to survive summary judgment, must evince a genuine issue of material fact with regards to whether the reasons stated by Sage are mere pretexts for a retaliatory motive. Because this is a retaliation claim and because the Fifth Circuit has not extended *Desert Palace* to such claims, Gray must demonstrate a genuine issue of material fact showing that but for the retaliatory motive, Sage would have hired her for the job in question.

> a.  <u>Gray Established a Genuine Issue of Material Fact</u>
> <u>at the Casual Connection Stage</u>

In Sage's first merit based argument for summary judgment on the retaliation claim, it asserts that the Title VII cause of action fails because Gray cannot present competent evidence to demonstrate that she has met the *prima facie* elements for retaliation.  Specifically, Sage alleges that Gray cannot meet the third element of the

*prima facie* case -- demonstrating a casual connection between the protected activity and the adverse employment action.[10]  Thus, the issue is whether the record contains evidence sufficient to create a genuine issue of material fact with regards to whether a causal connection exists between Gray's original E.E.O.C. complaint against CitiFinancial and Sage's decision not to hire Gray.

The unusual, if not bizarre, facts alleged in this case present an issue of first impression for the court.  A thorough scouring of the case law by the court (and presumably by counsel for the parties as well) failed to unearth any cases of a similar character upon which to rely in determining whether a causal connection can be established by the plaintiff.   Typically, retaliation claims survive summary judgment at the *prima facie* stage by demonstrating a causal connection based on the temporal proximity between the protected activity of the employee and the adverse employment action.  See, *e.g.*, *Swanson v. General Services Administration*, 110 F.3d 1180, 1188 (5th Cir.) (stating that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection'" required to make out a *prima facie* case of retaliation), *cert. denied*, 522 U.S. 948 (1997).  However, in non-hire cases, because notice to the potential employer of the protected activity and the adverse employment decision -- the failure to hire -- are

---

[10]     For purposes of the motion for summary judgment, Sage concedes that filing the original E.E.O.C. claim against CitiFinancial was a protected activity and that Sage's refusal to hire Gray constituted an adverse employment decision.  *See* Defendant's Summary Judgment Brief at 6.

almost always in close temporal proximity, timing is typically irrelevant.  See *Kelley v. Goodyear Tire and Rubber Company*, 220 F.3d 1174, 1179 (10th Cir. 2000).  Therefore, in a non-hire case, the plaintiff must point to "other evidence" in the record to demonstrate the causal connection.  *See id*.

As a matter of first impression, the court finds that if Gray were able to prove DaCoder's presence at Sage, a causal connection would be established between Gray's original E.E.O.C. complaint against CitiFinancial and Sage's decision not to hire her. That is, while on an interview, the presence of the interviewee's former employer -- against whom the interviewee has a pending E.E.O.C. claim -- would constitute sufficient "other evidence" to meet the causal connection element of the *prima facie* inquiry.  Because there is a genuine issue as to DaCoder's presence, and because his presence could establish the causal connection necessary for the *prima facie* case, the court must conclude that Gray has carried her initial burden under *McDonnell Douglas* to survive summary judgment.

b.  Sage has Satisfied its Burden of Articulating a
Legitimate, Non-Discriminatory Reason

Having satisfactorily met her burden of establishing evidence to support the *prima facie* elements of her retaliation claim, the burden shifts to Sage, which must proffer a legitimate, non-discriminatory reason for its decision not to hire Gray.  Sage fulfilled its burden through the Zuczek declaration in which Zuczek, Sage's corporate recruiter, stated that Sage decided not to hire Gray based on her performance in the

interview and on the skills tests.[11]  Gray does not contest the issue of whether Sage

met its burden in this respect.  Thus, under *McDonnell Douglas*, the burden shifts back

to the plaintiff.

c.  <u>Gray has not Demonstrated a Genuine Issue of<br>Material Fact Supporting Her Claim of Pretext</u>

The issue is whether or not there is evidence in the record to show a genuine

issue of material fact about whether the legitimate, non-discriminatory reasons stated

by Sage were merely pretexts for its retaliatory intent.  The burden on the plaintiff at

the pretext stage is significantly greater than it was at the *prima facie* causal connection

stage.  The plaintiff's ultimate burden of refuting the employer's reasons for not

hiring her as pretextual is measured by a "but for" standard.  See *Septimus*, 399 F.3d

at 608; see also *Pineda*, 360 F.3d at 487 (stating "We have consistently held that in

retaliation cases where the defendant has proffered a non-discriminatory purpose for

the adverse employment action the plaintiff has the burden of proving that 'but for'

the discriminatory purpose he would not have been terminated").  Thus, Gray must

demonstrate to the court that there is a genuine issue of material fact upon which a

reasonable jury could conclude that *but for* her engaging in a protected activity, Sage

---

[11]      "Sage made the decision not hire Ms. Gray based on the results of her interview and on the results of her skills test.  Specifically, as indicated in Mr. Jones' notes, Mr. Jones wrote 'will not look me in the eyes. * Over thinks questions.  Talks a lot but does not say much.'  Sage also made the decision not hire Ms. Gray based on Ms. Gray's skills test results, which were lower than the results of the person to whom Sage ultimately offered the position."  Zuczek Declaration ¶ 6.

would have hired her.  Because Sage asserts that it did not hire Gray because she performed worse on her skills test than the successful candidate, Gray must -- under the "but for" standard -- point to evidence either that refutes the claim that the successful candidate performed better than Gray or that demonstrates Sage did not take test scores into account in making its employment decision.

To counter Sage's assertions regrading Gray's suitability for the position in question, Gray points to three items:  (1) her conclusory statements regarding her own qualifications for the position, (2) statements made by the interviewer that Gray interpreted as meaning that Sage intended to hire her, and (3) the date of her interview in comparison to the date of her skills test.  *See* Plaintiff's Summary Judgment Brief at 10-11.

Self assessment statements by a candidate for employment are insufficient evidence to withstand summary judgment.  See *Hamilton*, 85 Fed. Appx. at *16, 2004 WL 34811 at **6.  The only evidence proffered by Gray regarding her *qualifications* for the position are the conclusory statements that "Sage would not hire her despite Plaintiff's overwhelming experience," *see* Plaintiff's Summary Judgment Brief at 9, and that Gray "had the qualifications that exceeded to get the job.  [She] had more time in doing the job than the person that referred [her]."  Gray Deposition at 57:3-5. Gray's conclusory statements regarding her qualifications are not competent evidence for consideration by the court on a motion for summary judgment.  To the extent

- 28 -

that Gray asserts that she has more experience than the person who referred her, that
assertion does not contest the legitimate non-discriminatory reasons articulated by
Sage.  Nowhere does Sage assert that Gray was unqualified for the position; instead,
Sage states that the successful candidate was more qualified.  The qualifications of the
person who referred Gray are irrelevant as to the reasons proffered by Sage for not
hiring Gray.  Thus, these statements are insufficient to create a genuine issue of
material fact.

While Gray's assertion that Parra assured her that she going to get the job, if
proven, might be probative to demonstrate that Sage's proffered reasons were pretext,
this statement in Gray's brief is a misrepresentation of her deposition testimony.
Unsworn statements made in a brief in opposition of summary judgments do not
constitute competent evidence for consideration by the court.  See *Gilmore v. Royal
Indemnity Company*, 240 F.2d 101, 105 (5th Cir. 1956); see also *Brown v. Mobil Oil
Corporation*, 902 F. Supp. 199, 121 (E.D. Tex. 1995).  In Gray's brief in opposition to
summary judgment, Gray asserts that causation is established in part because of
"Parra's representations that he would hire her."  Plaintiff's Summary Judgment Brief
at 9.  However, the unsworn statement in the plaintiff's brief is not competent
evidence; rather, the court must turn to Gray's deposition for verification of Parra's
statements.  Unfortunately for Gray, her deposition testimony does not support the
assertion in the brief.  In her deposition, Gray stated, "The interviewer assured me

that they would *get back in contact with me*.  And he acted like, as far as he was

concerned, that I had the position, but they needed to -- *they were still interviewing for*

*the positions*."  Gray Deposition at 57:5-9 (emphasis added).  She went on to state,

"He told me that -- basically, that I would *probably* be one of the ones that got one of

the [three] positions there."  *Id.* at 57:17-22 (emphasis added).  Nothing in either of

these two statements, even when read in the light most favorable to Gray,

demonstrates to the court that the interviewer made a representation that he would

hire Gray.  At best, these statements support the notion that Gray had the

qualifications for the position in question; however, nothing in the statements show

that Sage's reason for not hiring Gray -- that the successful candidate was better

qualified -- constitutes pretext.  As a result, this argument fails to create a general

issue of material fact regarding pretext.

Finally, the plaintiff makes a self-declared "logic" based argument to

demonstrate the pretextual nature of the legitimate, non-discriminatory reasons

proffered by Sage for its decision not to hire Gray.  This logic based argument fails

both because it is unsupported by competent evidence and because, even when

assumed to be true, it never refutes Sage's claim that a more qualified candidate was

hired for the position.  The plaintiff's logic based argument rests on the disputed issue

regarding the date of the interview and skills test -- Gray claims she took the skills

test and was interviewed on April 5 or 6, 2004, *see* Gray Declaration ¶¶ 6-7, while

Sage asserts that Gray was interviewed and took the skills test on March 2, 2004, *see* Zuczek Declaration ¶ 3.  Essentially, Gray asks the court to adopt half of each position.  Specifically, she wants the court to read the facts so as to find that she took the skills test on March 2, 2004 -- in contradiction to her sworn statement in her declaration, *see* Gray Declaration ¶¶ 6, 8 -- but to find that her interview did not occur until April 5 or 6, *see* Plaintiff's Summary Judgment Brief at 10.  Once this unsupported contradictory time table is established, Gray contends:

> Logic dictates that if Sage refused to hire Plaintiff based upon her test scores and an interview, which Sage contends occurred on March 2, 2004, it would not have called her in for the interview during the week of April 5, 2004, unless of course Sage is in the habit of interviewing prospective employment candidates even after it has already decided not to hire the candidate.
>
> The fact that Rueben Parra called Plaintiff in for an interview during the week of April 5, 2004, which is inconsistent with Sage's contention that it made a hiring decision in mid-March, creates sufficient fact issues in determining whether Sage's preferred [sic] reasons for refusing to hire Plaintiff are pre-textual.

*Id.*

First, the assertion in Gray's response to the motion for summary judgment that the skills test was held on one day and that the interview was held a month later is not supported by competent evidence.  Again, unsworn assertions in a response brief are not competent evidence for consideration on summary judgment.  There are only two pieces of competent evidence on the subject of the temporal relationship

between the interview and the skills test.  See *Gilmore*, 240 F.2d at 105; see also

*Brown*, 902 F. Supp. at 121.  The first piece of evidence is the Zuczek Declaration in

which Zuczek stated that Gray both took the skills test and interviewed on March 2,

2004.  *See* Zuczek Declaration ¶ 3.  The other piece of evidence is Gray's own

declaration where she asserted twice that she took the skills test and completed her

interview on the same day.  *See* Gray Declaration ¶¶ 6, 8.  While there is a genuine

issue as to the date on which the skills test and interview occurred, there is no

competent evidence before the court indicating that the two events occurred on

different days.

Second, even if the court were to accept Gray's unsupported, contradictory

factual assertion, this "logic" argument still fails to demonstrate pretext.  To prove to

a jury that she would have been hired "but for" her protected activity, the plaintiff

must be able to point to some evidence that she was more worthy of the position than

the person ultimately selected.  See *Celestine v. Petroleos de Venezuella SA*, 266 F.3d

343, 356-57 (5th Cir. 2001) (stating in a failure to promote case under the racial

discrimination subset of Title VII that to prove pretext under the *McDonnell Douglas*

with sufficiency to survive summary judgment, the plaintiff must demonstrate that he

was "clearly better qualified" than the employee ultimately selected for the position).

Sage never asserts that the scores on her skills tests were *too low* to warrant

interviewing -- or even hiring -- Gray; instead, Sage claims that Gray's skills tests

results were *lower than* the results of the person who was ultimately offered the position.  Zuczek Declaration ¶ 6.  Nothing in Gray's "logic" based argument, or the record as a whole, presents a genuine issue of material fact as to whether the person to whom the job was offered indeed scored higher than Gray on the skills tests.

Because Gray has not produced evidence demonstrating a genuine issue of material fact that would allow a reasonable jury to conclude that the proffered reasons for not hiring Gray were mere pretext, the court must grant the defendant's motion for summary judgment on the plaintiff's Title VII retaliatory non-hire claim.  This result dictates that Gray's Texas Labor Code retaliation claim also fails.  See *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n. 2 (5th Cir. 1999) (stating that the analysis regarding Texas state law retaliation claims tracks federal law).

> 2.  *Intentional Infliction of Emotional District:  Gray's IIED Claim*
> *Fails Because Even if Proven, Sage's Alleged Behavior*
> *was not Sufficiently Extreme or Outrageous*

Sage offers three grounds in support of its motion for summary judgment on Gray's claim for intentional infliction of emotional distress ("IIED").  First, Sage argues that because this cause of action stems from an "ordinary employment dispute," Texas law prohibits the IIED claim.  *See* Defendant's Summary Judgment Brief at 9-10.  Second, Sage contends that the alleged conduct is insufficient to constitute extreme and outrageous behavior in support of the IIED claim.  *See id.* at 11.  Third, Sage asserts that to the extent that the IIED claim stems from the

retaliatory non-hire, the IIED claim is not cognizable because IIED claims are to serve as gap-filler claims in the state of Texas; since Title VII would provide for a cause of action to recover under such a claim, there is no gap to fill and thus the IIED cause of action is inapplicable. *See id.* at 12-13.

Under Texas law, the tort of intentional infliction of emotional distress requires that a plaintiff prove that: (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused emotional distress to the plaintiff, and (4) the resulting emotional distress was severe. *MacArthur v. University of Texas Health Center at Tyler*, 45 F.3d 890, 898 (5th Cir. 1995); *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). It is for the court to determine whether the evidence presented is sufficient to create a fact question for the jury. See *Benavides v. Moore*, 848 S.W.2d 190, 195 (Tex. App.--Corpus Christi 1992, writ denied). In the present motion, Sage challenges only the plaintiff's ability to point to evidence regarding the second element of the IIED claim -- whether the conduct was extreme and outrageous.

Extreme and outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman*, 855 S.W.2d at 621. There is no litmus test to determine whether a certain behavior is extreme or outrageous enough to warrant a claim for IIED; determinations regarding

this element must be made on a case-by-case basis.  See *Skidmore v. Printing and Packaging, Inc.*, 188 F.3d 606, 613 (5th Cir. 1999).  The definition of what constitutes extreme and outrageous behavior is strictly interpreted.  See *Morrison v. Weyerhaeuser Company*, No. 04-20388, 119 Fed. Appx. 581, 587-88, 2004 WL 2830846, at **4 (5th Cir. Dec. 10, 2004) (falsification of safety checklist in an effort to support employer's discriminatory firing of employee not considered extreme and outrageous conduct); *Walker v. Thompson*, 214 F.3d 615, 628 (5th Cir. 2000) (stating that while conduct in the employment context may be illegal or condemnable, such conduct does not necessarily rise to the level of extreme and outrageous conduct necessary to support an IIED claim and that racial harassment by employer did not meet the requisite level of conduct); *Musgrove v. Mobil Oil Corporation*, No. 3:99-CV-1562-P, 2003 WL 21653125, at *13-14 (N.D. Tex. Apr. 1, 2003) (holding that offer of severance package by employer in exchange for employee dropping Title VII claim against employer did not constitute extreme or outrageous behavior); *Goins v. Hitchcock Independent School District*, 191 F. Supp. 2d 860, 872 (S.D. Tex. 2002) (finding that plaintiff who brought a Title VII gender discrimination suit against her employer could not recover for IIED where plaintiff alleged that the employer was "placing [her] in a false light with her peers, organizing a campaign to 'black  ball' [her] in the community, [and] discouraging future employers from offering [her] an

employment contract" because such activities did not qualify as extreme and outrageous), *aff'd*, 65 Fed. Appx. 508 (5th Cir. March 27, 2003).

In the employment context, a claim for intentional infliction of emotional distress will not lie for "mere employment disputes" because such disputes will never reach the level of extreme and outrageous behavior necessary for an IIED claim. *MacArthur*, 45 F.3d at 898; see *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 34 (5th Cir. 1992). Supervising, reviewing, criticizing, demoting, transferring, disciplining and even terminating employees all constituted ordinary employment disputes within which IIED claims are not recognized. *See id.*

The court finds *Williams v. E.I. Du Pont De Nemours & Co.*, 955 F. Supp. 711 (S.D. Tex. 1996), instructive as to the level of conduct necessary to support a claim for IIED within the employment context. In *Williams*, the plaintiff filed Title VII claims against her employer alleging both race and gender discrimination. *See id.* at 714. The plaintiff claimed, among other things, that her IIED claim was warranted because: (1) her employer forced her to meet and discuss her Title VII charges within days of returning from her father's funeral, (2) during a settlement talk, her employer joked about what the plaintiff would do with her settlement money; (3) the plaintiff's employer asked her if she was dating her lawyer; and (4) after being told he was out of line, the plaintiff's employer again pressured the plaintiff to settle. *See id.* at 726. The *Williams* court found that even when all of the plaintiff's allegations were taken

as true, the defendant's conduct was "inconsiderate at best" and was "not extreme and outrageous as a matter of law." *Id.*

To the extent that Sage seeks to classify the current case as an ordinary employment dispute, it has misconstrued the plaintiff's allegations in her complaint. While Sage contends in its motion and brief in support thereof that the plaintiff is alleging emotional distress from the intentional non-hire event, *see* Defendant's Summary Judgment Brief at 10, Gray is actually claiming that she suffered emotional distress by Sage's intentional or reckless conduct in allowing DaCoder to question Gray while she was at Sage for her interview, *see* Plaintiff's Summary Judgment Brief at 11. In reply to Gray's response in opposition to the motion for summary judgment, Sage attempts to classify Gray's IIED claim as an attack on the procedures used during the interview process; and thus, even when characterizing DaCoder's alleged presence as the gravamen of the IIED claim, this is nothing more than an "ordinary employment dispute". *See* Defendant's Summary Judgment Reply at 7. The court is unpersuaded.

While an interview and decision not to hire a candidate for employment are within the bounds of an ordinary employment dispute, the alleged conduct in this case, when read in the light most favorable to the plaintiff, does not fit within that definition. The facts alleged are that during an interview with Sage, the interviewer intentionally permitted an employee of another company to question Gray regarding

a pending E.E.O.C. charge.  The fact that neither the parties nor the court can

identify another reported case involving even remotely similar factual allegations

should serve as the first indication that this is not an "ordinary employment dispute."

This is not a question of how or who conducted Sage's interview, it is a question of

potential collusion between two corporations and, specifically, the possibility that

Sage assisted in allowing CitiFinancial to intimidate Gray into dropping her E.E.O.C.

complaint.  Because this employment dispute is far from ordinary, Sage's first ground

for summary judgment on the IIED claim is without merit.

        However, determining that the actions in question fall outside the context of

the ordinary employment dispute does not end the inquiry.  While an ordinary

employment dispute will not rise to the level of extreme and outrageous conduct as is

required to succeed on an IIED claim, not all actions falling outside the normal

employment disputes necessarily rise to that requisite level.  See *Johnson*, 965 F.2d at

34 (finding that one of the plaintiff's claims against his former employer fell outside

of the ordinary employment dispute but that the conduct in question did not amount

to an IIED claim because the behavior was not sufficiently extreme or outrageous).

Thus, the issue is whether the plaintiff has provided evidence that is sufficient to

demonstrate that the conduct in question was extreme and outrageous enough to

support her IIED claim.

None of the conduct attributed by Gray to Sage rises to the level of "extreme and outrageous."  First, it is uncontested that the alleged conversation between DaCoder and Gray was not hostile.  *See* Gray Deposition at 40:8-23.  Gray stated in her deposition that voices were not raised and that threats were not made.  *See id.*  Second, even when the evidence is viewed in the light most favorable to Gray, the court concludes, as a matter of law, that the behavior in question was not extreme or outrageous enough to warrant such a claim, as indicated in the case law regarding the type of behavior that will support an IIED claim.

Because the plaintiff has failed to assert and prove facts sufficient to create a question of whether the conduct was sufficiently outrageous and extreme, the defendant is entitled to summary judgment on Gray's claim of intentional infliction of emotional distress.  The court therefore does not reach Sage's "gap-filler" argument.

### 3.  *Conspiracy Claim:  Gray's Conspiracy Claim Fails Because She Has Not Shown an Object of the Conspiracy*

Finally, Sage moves for summary judgment on Gray's claim of conspiracy, arguing that Gray's claim fails as a matter of law because she is unable to proffer evidence to support four of the five requisite elements.  *See* Defendant's Summary Judgment Brief at 13.  To prevail on a conspiracy claim, the plaintiff must establish: (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful

overt acts; and (5) damages as the proximate result.  See *Insurance Company of North America v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998).  The object of the conspiracy must be either an unlawful purpose or a lawful purpose by unlawful means.  *See id*.  It is well settled law in Texas that recovery on a claim of conspiracy necessarily requires that the plaintiff be able to assert a claim for an underlying tort.  See *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).  Sage argues that Gray cannot adduce evidence sufficient to survive summary judgment on elements two through five.  *See* Defendant's Summary Judgment Brief at 13.

A thorough parsing of each challenge raised by Sage is unnecessary, as the movant properly challenges the plaintiff's conspiracy claim on the second element. Sage argues the plaintiff provided no evidence to present the court with a genuine issue of material fact with regards to the object of the conspiracy element.  *See id.* at 13-14.  Specifically, Sage argues, "Plaintiff cannot establish that Sage is liable for an underlying tort.  Plaintiff's conspiracy claim is based on two underlying causes of action -- retaliation under Title VII and intentional infliction of distress."  *See id.* at 14.  However, Sage goes on to state the obvious in footnote 12:  "In her Petition, Plaintiff contends that Sage conspired with CitiFinancial 'to attempt to circumvent the legal limitations on permissible questioning provided by the Texas Labor Code.'" *See id.* at 14 n. 12.  Upon a thorough search of the applicable statutory and case law this court agrees with Sage's conclusion that no such cause of action exists.

Under *Celotex*, Sage met its burden on summary judgment by directing the court to the grounds upon which summary judgment can be granted.  Though Sage discusses at length its presumption that Gray was asserting a cause of action for conspiracy to violate Title VII and/or conspiracy to intentionally inflict emotional distress, the attention directed in the footnote was sufficient to alert the court and the plaintiff to the deficiency in the complaint.[12]  Gray's conspiracy claim fails on the second element; she needed to bring a cause of action for commission of a tort in order for the conspiracy claim to survive.  Thus, Gray failed to satisfy this second element on two independent grounds.  First, her conspiracy claim does not allege an unlawful purpose; neither the court nor the parties were able to identify the tort of circumventing the "legal limitations on permissible questioning provided by the Texas Labor Law."  Second, even if Gray were to identify some tort covered under this language, Gray failed to allege that either Sage or CitiFinancial actually committed this tort.

Because the plaintiff failed to assert a genuine issue as to any material facts with regards to this second element, the court grants Sage's motion for summary judgment as to the conspiracy claim.

---

[12]     Even if the court were to adopt the assumption raised by the defendant, Gray would still fail on the second element of her conspiracy claim because, as demonstrated above, neither her retaliation claim, nor her IIED claim can survive summary judgment.  Thus, the plaintiff would be unable to assert an object of the conspiracy if the conspiracy claim was read as such.

III.  <u>CONCLUSION</u>

For the reasons set forth above, Sage's motion to strike is **GRANTED** in part

and **DENIED** in part, and Sage's motion for summary judgment is **GRANTED**.

Judgment will be entered that Gray take nothing from Sage on her claims in this case.

**SO ORDERED**.

October 2, 2006.

_____

A. JOE FISH

CHIEF JUDGE